UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IBRAHIM ADAM,

            Petitioner,

   v.

JEFFREY A UTTECHT,

            Respondent.

Case No. C18-1136-RSL-MAT

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a state prisoner who is currently confined at Stafford Creek Corrections Center in Aberdeen, Washington, seeks relief under 28 U.S.C. § 2254 from a King County Superior Court judgment and sentence. Respondent has filed an answer to petitioner's habeas petition and submitted relevant portions of the state court record. Petitioner has filed a response to respondent's answer.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that petitioner's habeas petition be DENIED, this action be DISMISSED with prejudice, and a certificate of appealability be GRANTED in part and DENIED in part.

REPORT AND RECOMMENDATION - 1

II. FACTUAL AND PROCEDURAL HISTORY

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to petitioner's conviction as follows:

> Adam was introduced to Shelia LaRose when she was appointed to represent him in a criminal case involving a charge of felony stalking. Adam pled guilty to the charge and LaRose withdrew from the case in July 2013. In August 2013, Adam was released from incarceration. For the next several months, he called LaRose on the telephone every day, sometimes multiple times per day, professing his love for her and his desire that she marry him. When LaRose told him to stop calling and began screening her calls, Adam began leaving voice mail messages for her. Given the persistent and obsessive nature of Adam's conduct, LaRose began to fear for her safety.
>
> By February 2014, in addition to the persistent telephone calls and voice mail messages, Adam began appearing at LaRose's home, wherein she lived with her 11-year-old daughter. One of Adam's messages detailed that, over the past four months, he had been watching LaRose through the glass doors of her bedroom. His message also said that he had seen LaRose naked and that he wanted to touch her body. On another occasion shortly thereafter, a day after LaRose had walked to her mailbox with her daughter, LaRose received a voice mail message from Adam detailing that he had seen her with her daughter. LaRose reported Adam's conduct to the police.
>
> The next day, Adam left a voice mail message discussing his knowledge of LaRose's cats, which she never permitted to go outside of her home. Later that same day, LaRose saw Adam standing outside of her house and staring at her through a gate outside. LaRose called 911 but the police were unable to locate Adam.
>
> On the following day, Adam left a voice mail message stating that he wanted to leave LaRose a present. When LaRose left work later that day, she discovered a bag on her parked vehicle's roof. She immediately telephoned 911. When she then attempted to leave the garage in which her vehicle was parked, Adam approached her from a stairwell, causing her to run away. The police later arrived but were again unable to locate Adam. When the police searched the bag, they found that it contained women's lingerie.
>
> That night, LaRose arranged for her daughter to stay in a "safe house," with instructions not to leave, while LaRose stayed at home. Adam again appeared at her home, this time at 1:30 a.m. LaRose called 911 and, when the police were unable to locate Adam, she telephoned her ex-husband and asked him to stay overnight with her. He complied. That same early morning, Adam appeared at her home twice more, a rock was thrown through her bedroom window, and, a few

REPORT AND RECOMMENDATION - 2

hours later, Adam left LaRose a voice mail message stating that he had been hiding in the bushes when the police were looking for him and that he wanted to apologize about the window. In another voice mail message left that morning, Adam said that he had seen a man arrive at LaRose's home the previous night and that he would shoot and kill that man.

The next day, LaRose developed a plan to enable the police to arrest Adam. She arranged to meet with Adam at a coffee shop and had several of her colleagues accompany her there. When Adam arrived at the coffee shop, one of her colleagues called 911. Adam was arrested shortly thereafter.

Adam was charged with one count of felony stalking pursuant to RCW 9A.46.110. The State, upon amended information, further alleged four aggravating factors pursuant to RCW 9.94A.535(3): (1) the offense was part of an ongoing pattern of abuse occurring over a prolonged period of time, (2) the offense was committed shortly after Adam was released from incarceration, (3) the offense was committed for Adam's sexual gratification, and (4) the offense was committed within sight or sound of LaRose's minor child.

At the first superior court pretrial hearing, speaking through an interpreter, Adam sought to represent himself. The reason for the request, he said, was that he wished to personally interview the victim and see the documents exchanged in discovery in his case. He also said that, because his attorney was busy working on a trial on another case, he felt that his right to a speedy trial was being violated. The trial court, after engaging in a colloquy with Adam, granted his request. At a hearing shortly thereafter, however, Adam withdrew his request and the court re-appointed his attorney.

By the next hearing, Adam himself had requested in writing that his competency be evaluated. His attorney concurred. The trial court ordered that Adam be examined. The evaluating psychologist concluded that he was not competent to stand trial and so testified at a hearing. Nevertheless, taking into consideration the entire record at the time of the competency hearing and the evidence presented at the hearing, the trial court determined that Adam's evidence did not overcome the presumption of competency.

A jury found Adam guilty as charged. The jury was then asked to return special verdicts as to two of the alleged aggravating factors—that Adam committed the offense for purposes of sexual gratification and that he committed the offense within sight or sound of a minor child. The jury found that both allegations had been proved. Then, after additional evidence was presented, the jury was asked to reach determinations as to the remaining alleged aggravating factors—that Adam committed the offense over a prolonged period of time and that he displayed rapid recidivism by committing the offense. The jury also found both allegations proved.

The trial court imposed an exceptional sentence of 84 months of imprisonment,

REPORT AND RECOMMENDATION - 3

specifically ruling that each of the four aggravating factors, standing alone, was sufficient to warrant the sentence imposed. The trial court also imposed 36 months of community custody.

Dkt. 11-1 at 17-22 (footnotes omitted).

Petitioner challenged his conviction and sentence in the Court of Appeals and Washington Supreme Court but was unavailing. *See id.* at 17-31, 135.

### III.  GROUNDS FOR RELIEF

Petitioner identifies two grounds for habeas relief:

GROUND 1:  The trial court improperly found petitioner competent to stand trial in violation of his Fourteenth Amendment right to due process.

GROUND 2:  The trial judge impermissibly commented on the evidence.

Dkt. 4 at 5-7, 19-21. Respondent concedes that petitioner properly exhausted his state court remedies and timely filed the instant habeas petition. *See* Dkt. 10 at 6.

### IV.  DISCUSSION

A.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the last

REPORT AND RECOMMENDATION - 4

1  reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v.*
2  *Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

3  Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition
4  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a
5  question of law, or if the state court decides a case differently than the Supreme Court has on a set
6  of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under
7  the "unreasonable application" clause, a federal habeas court may grant the writ only if the state
8  court identifies the correct governing legal principle from the Supreme Court's decisions, but
9  unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The
10 Supreme Court has made clear that a state court's decision may be overturned only if the
11 application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The
12 Supreme Court has further explained that "[a] state court's determination that a claim lacks merit
13 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of
14 the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*
15 *v. Alvarado*, 541 U.S. 652, 664 (2004)).

16 Clearly established federal law, for purposes of AEDPA, means "the governing legal
17 principle or principles set forth by the Supreme Court at the time the state court render[ed] its
18 decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta.
19 *Id*. "If no Supreme Court precedent creates clearly established federal law relating to the legal
20 issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or
21 an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955
22 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

23 With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

REPORT AND RECOMMENDATION - 5

court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). A state court's determination of facts has been held to be unreasonable under § 2254(d)(2) if "the state-court decision is based on a finding [that] is unsupported by sufficient evidence; the process employed by the state court [wa]s defective; or . . . no finding was made by the state court at all, when it was required to make a finding." *Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014) (first and second alterations in original, citation and internal quotation marks omitted).

In addition, § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct." The petitioner bears the burden of rebutting "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)). Ninth Circuit "panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings." *Attwood v. Ryan*, 870 F.3d 1033, 1047 (9th Cir. 2017) (quoting *Murray*, 745 F.3d at 1001). "However, a court need not address the interaction between § 2254(d)(1) and (e)(1) when the petitioner's claims fail to satisfy either provision." *Id.*

B.     Ground 1: Competency

Petitioner argues that the trial court erred in finding him competent to stand trial. The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992); *Drope v.*

REPORT AND RECOMMENDATION - 6

*Missouri*, 420 U.S. 162, 171-73 (1975). "[A] State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996).

The test for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). A state court's finding that a defendant was competent to stand trial is a factual question that is entitled to a presumption of correctness on federal habeas review. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000).

Prior to the competency hearing, Dr. Robert Powers, a clinical psychologist at Western State Hospital, conducted an 80-minute interview with petitioner, reviewed petitioner's criminal history and medical records, and issued a report concluding that petitioner was not competent to stand trial. Dkt. 11-1 at 25, 714-716. The State did not engage an expert to rebut this evidence. *Id.* at 25.

At the competency hearing, the trial court placed the burden on petitioner to establish his incompetency. Dkt. 11-1 at 709; *see also State v. Coley*, 180 Wash.2d 543, 557 (2014) (defendants in Washington are presumed competent unless the contrary is proven by a preponderance of the evidence). Dr. Powers testified and submitted his report into evidence. *See* Dkt. 11-1 at 710-92. Dr. Powers testified that he diagnosed petitioner with unspecified schizophrenia spectrum and

REPORT AND RECOMMENDATION - 7

other psychotic disorder, post-traumatic stress disorder per history, and poly-substance use disorder. *Id.* at 716. Dr. Powers opined "that due to the symptoms of his mental illness, Mr. Adam lacks the capacity to understand the nature of the proceedings against him and he lacks the capacity to assist in his defense." *Id.*

Dr. Powers explained that compared to when he had seen petitioner on previous occasions, petitioner "appeared much more delusional and paranoid," was focused on "persecutory themes," "was very delusional about the relationship he had with the alleged victim and . . . had a difficult time staying focused on information that was being discussed during the interview." *Id.* at 717; *see also id.* at 727, 773. Dr. Powers testified that petitioner "has the intelligence to understand . . . the mechanical aspects of a trial or the courtroom procedures" but that his beliefs were delusional and unrealistic, specifically his belief that law enforcement conspired to fabricate the evidence against him. *Id.* at 718-20; *see also id.* at 721 (Dr. Power's testimony that petitioner had "the mechanical or the cognitive abilities to know right from wrong, what's legal, what's not. But his delusions kind of overwhelm that."). Dr. Powers also testified that petitioner's attorney would not be able to "have a factual, realistic conversation with him about the facts of the case." *Id.* at 720.

On cross examination, Dr. Powers testified that petitioner was able to appropriately answer questions about his life and criminal case but that he would devolve into delusions about the case and "he wasn't always redirect-able." *Id.* at 753-55, 757, 759, 781. Dr. Powers also testified that petitioner understood Ms. LaRose was the alleged victim, the alleged conduct that formed the basis of the criminal charge against him, and that he was being prosecuted for that conduct. *See id.* at 757-59, 763. Dr. Powers further testified that petitioner understood his attorney's role in defending him against the State's prosecution. *Id.* at 766-67. Dr. Powers also acknowledged that petitioner was capable of remembering the events of his case:

REPORT AND RECOMMENDATION - 8

1      Q. Is it fair to stay that Mr. Adam is probably capable, maybe in a – in a somewhat rambling fashion, but capable of saying whether he did something or whether he – whether he remembers whether something happened or not.

3      A. Yes.

*Id.* at 780. No other witnesses were called at the hearing.

In closing, petitioner's attorney argued that petitioner had regressed since being incarcerated and was unable to focus on the peril before him and intelligently assist in his defense because of his delusions about his relationship with the alleged victim. *Id.* at 794, 796. The prosecutor responded that petitioner could understand the nature of the proceedings, pointing to petitioner's numerous written submissions to the court. *Id.* at 801-02. The prosecutor also argued that although it may have been difficult for petitioner to communicate with his attorney, he was still able to eventually relay the necessary information. *Id.* at 802-03.

The trial court found that petitioner failed to carry his burden. *Id.* at 807. The court found that "there's no question that he has a basic understanding of the legal process . . . and the nature of [the] legal proceeding." *Id.* at 807-08. The court also found that petitioner could assist in his defense. *Id.* at 808. The court recognized that "it's difficult because of the fact that he has a tendency to go off on a tangent of talking about conspiracy theories and so on," but that "it is possible for an attorney to work with him and get the basic information to provide a defense." *Id.*

The Court of Appeals found that the trial court did not abuse its discretion. The court set forth the legal standard as follows: "A defendant is incompetent if he or she 'lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect.'" *Id.* at 23 (quoting RCW 10.77.010(15)).[1] The court then summarized the record and proceedings prior to the competency hearing, which were relevant to

---

[1] The Washington Supreme Court has held that RCW 10.77.010(15) reflects the federal test for competency set forth in *Dusky*. *State v. Ortiz-Abrego*, 187 Wash.2d 394, 403 (2017).

REPORT AND RECOMMENDATION - 9

the trial court's competency finding:

> At the first pretrial hearing, Adam sought to proceed pro se based on his belief that his attorney was not properly representing him. Moreover, Adam explained, he felt that his right to a speedy trial was being violated, he wanted to personally interview LaRose, and his attorney had not provided him with an adequate opportunity to view the discovery materials produced by the prosecutor. In response to Adam's request, the trial judge and Adam engaged in an extended colloquy, during which Adam acknowledged that he was waiving his right to the assistance of an attorney, he understood that the rules of evidence would apply to him, he understood that the State was seeking an exceptional sentence based on an alleged aggravating factor,[2] and that the State had the burden to prove its case against him. The trial court found his waiver of his right to an attorney to be voluntarily and knowingly made and allowed him to proceed pro se.
>
> At a hearing two weeks later, Adam, now pro se, informed the trial court that he had sought to interview LaRose himself and had been prevented from doing so. The trial court explained that another judge had ordered that Adam could not interview the victim himself and that he would have to obtain an investigator to conduct the interview. Also at this hearing, the prosecutor requested to amend the information to add allegations of three aggravating factors. The trial court granted the request and Adam was arraigned on the amended information. The prosecutor also noted that the statutory maximum sentence was 10 years of incarceration and stated that, should Adam wish to reconsider his pro se status, the State would not object. The trial judge then asked Adam if he wished to have a lawyer again represent him. Adam stated that he did. The trial court reappointed his prior attorney.
>
> Four months later, Adam himself filed a request for a competency exam.[3] At a hearing shortly thereafter, his attorney agreed that the examination was warranted. The trial court ordered that Adam be examined.

*Id.* at 23-25. The Court of Appeals also summarized the testimony presented at the competency hearing. *Id.* at 25-26; *see also supra* pgs. 8-9. The Court of Appeals then explained its decision to affirm:

> First, the record supports the finding that Adam had the capacity to understand the legal proceedings against him. The record reflects that Adam understood the

---

[2] [Court of Appeals footnote 4] At the time of the colloquy, the State had alleged only the aggravating factor pertaining to sexual motivation.

[3] [Court of Appeals footnote 5] Prior to the competency hearing, Adam had personally filed numerous motions and affidavits with the trial court, including an affidavit in support of his motion to dismiss his case, an affidavit in support of his request to proceed pro se, and a motion to interview the State's witnesses.

REPORT AND RECOMMENDATION - 10

> stalking charge brought against him, the alleged conduct that led to the charge, the legal rights to which he was entitled during his prosecution, and the various individuals and institutional actors present in the legal proceeding.
>
> Moreover, the record also supports the finding that Adam possessed the capacity to provide his attorney with the basic information necessary to put on a defense. Although Adam may have periodically suffered from certain delusions, the record supports the trial court's finding that he remained capable of providing pertinent information to his attorney when asked, even though it may have required effort by his attorney. Thus, the trial court duly considered Adam's mental faculties and properly determined that he possessed the necessary level of mental functioning to assist his attorney in his defense. *Ortiz-Abrego*, 387 P.3d at 646 (citing *Godinez*, 509 U.S. at 404).

*Id.* at 11.

Petitioner argues that the state courts improperly disregarded Dr. Powers's opinion and defense counsel's representations that he was unable to rationally assist with his defense. Dkt. 4 at 19-21; Dkt. 15 at 4, 7-8. As noted above, the state courts' finding that petitioner was competent is entitled to deference. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). Although Dr. Powers's opinion and defense counsel's representations indicate that rational minds can disagree with the state courts' finding that petitioner was competent to stand trial, the Court cannot say on the record before it that the state courts' finding was based on an unreasonable determination of the facts or that it is contradicted by clear and convincing evidence. Petitioner's pretrial activities and Dr. Powers's testimony on cross examination regarding the information petitioner was able to relay, albeit in a nonlinear manner, support the conclusion that petitioner understood the proceedings against him and would be able to assist his attorney with a reasonable degree of rational understanding. *See* Dkt. 1-1 at 753-59, 780-81. The Court thus concludes that petitioner is not entitled to habeas relief on Ground 1.

C.    Ground 2: Improper Commenting on the Evidence

Petitioner contends that the trial court improperly commented on the evidence by

REPORT AND RECOMMENDATION - 11

1  supplementing the language in a jury instruction relevant to one of the four aggravating factors.

2  On direct appeal, the State conceded this issue. Dkt. 11-1 at 28. The Court of Appeals, however,

3  found that the error was not prejudicial:

> The jury herein determined that all four aggravating factors submitted to it for consideration were proved. The sentencing court announced that each factor individually warranted the imposition of the sentence imposed.
>
>> The Court finds that the defendant's sexual motivation as evidence[d] by leaving underwear on the victim's car, and repeated calls referencing her body warrant an exceptional sentence above the standard range.
>>
>> The Court finds that the presence of the victim's minor daughter for portions of the stalking and the fact that she had to leave her home because the victim feared the Defendant is a substantial and compelling reason to impose an exceptional sentence.
>>
>> The Court finds that a standard range sentence would fail to reflect the extensive history of psychological abuse the defendant inflicted on women that he has purely professional or casual contact with. The Defendant has three prior stalking convictions. The Defendant's stalking behavior has persisted despite police intervention and the court[']s intervention.
>>
>> The Defendant was in jail for stalking in August 2013 and resumed his stalking behaviors immediately upon his release. His re-offense immediately after having been released for stalking warrants and [sic] exceptional sentence.
>>     ....
>>
>> Each one of these aggravating circumstances is a substantial and compelling reason, standing alone, that is sufficient justification for the length of the exceptional sentence imposed. In the event that an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same.
>
> It is clear that the sentencing court would have imposed the same sentence if merely one of the aggravating factors had been found by the jury to have been proved. It is equally clear that the sentencing court would impose the same sentence on remand. Thus, Adam is not entitled to appellate relief.

*Id.* at 28-29.

Petitioner fails to establish that he is entitled to habeas relied on Ground 2. He shows no

REPORT AND RECOMMENDATION - 12

error in the Court of Appeals' finding that the trial court's error was not prejudicial, nor does he challenge the remaining three aggravating factors, which independently support his sentence. Accordingly, Ground 2 should be denied.

D. <u>Evidentiary hearing</u>

Petitioner asks the Court to hold an evidentiary hearing. Because his claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

## V.    <u>CERTIFICATE OF APPEALABILITY</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability should be granted as to Ground 1 and denied as to Ground 2.

## VI.    <u>CONCLUSION</u>

The Court recommends petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be GRANTED as to Ground 1 and DENIED as to Ground 2. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 29, 2019**.

Dated this 5th day of March, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14